UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VERN RAMON LOCKRIDGE,

    Plaintiff,

  v.                                             18-CV-816
                                                 DECISION AND ORDER

THE BUFFALO POLICE,
E-District and C-District,

ALPHONSO WRIGHT
C-District Patrol, and

CARMEN MENZA,
Chief E-District Patrol,

    Defendants.

      The pro se plaintiff, Vern Ramon Lockridge, has filed a complaint asserting statutory claims under 42 U.S.C. §§ 1983 and 1986, Title VI of the Civil Rights Act of 1964, and the Safe Streets Act of 1968; he also has asserted a common law claim for negligence under New York law. Docket Item 1. In addition, Lockridge has moved to proceed in forma pauperis (that is, as someone who should have the prepayment of the ordinary filing fee waived because he cannot afford it), Docket Item 3, he has asked the Court to appoint counsel for him, Docket Item 4.

      Because Lockridge meets the statutory requirements to proceed in forma pauperis under 28 U.S.C. § 1915(a), his request is granted. As a result, the Court has screened the complaint under 28 U.S.C. § 1915(e). For the reasons that follow, the complaint fails to state a claim on which relief may be granted, and this case will be dismissed unless Lockridge files an amended complaint as directed below.

**DISCUSSION**

I.   **IN FORMA PAUPERIS**

A party seeking to bring a civil action in federal court ordinarily is required to pay a $350 filing fee, 28 U.S.C. § 1914, and an additional administrative fee of $50. *See Wagoner v. Ciocca*, 2016 WL 5720827, at *1 (W.D.N.Y. Sept. 30, 2016). But a litigant may ask to avoid the payments by moving for leave to proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(1).

The court evaluates a litigant's financial status to determine whether he or she is eligible to proceed in forma pauperis under § 1915(a).[1] To be eligible, an applicant must complete an affidavit demonstrating that he or she meets the requirements of § 1915(a). More specifically, applicants are not required to "demonstrate absolute destitution," *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983), but must establish that they cannot afford to pay for both the necessities of life and the costs of litigation. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). Because Lockridge meets the statutory requirements of 28 U.S.C. § 1915(a), Docket Item 3, he is granted permission to proceed in forma pauperis. Therefore, under 28 U.S.C. § 1915(e)(2)(B), this Court screens the complaint.

---

[1] 28 U.S.C. § 1915 addresses leave to proceed in forma pauperis. That section's requirement that "the prisoner" provide a statement of all assets that he or she possesses does not preclude non-prisoners from proceeding in forma pauperis in federal court. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275-76 (6th Cir. 1997). "Only prisoners, however, have the additional requirement of filing a prison trust account" statement under 28 U.S.C. § 1915(a)(2). *Id.* at 277.

## II. SCREENING THE COMPLAINT

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). Under § 1915, the court "shall dismiss the case at any time if the court determines that [it] . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "The settled rule is that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 148 (2d Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). But leave to amend a complaint should be denied if any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

In evaluating the complaint, the court must accept all the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted)).

### A. The Complaint's Allegations

A liberal reading of the complaint here tells the following story.

3

On December 28, 2017, Lockridge called the Buffalo Police Department because he "thought [he] heard a gunshot" and wanted assistance "due the condition [he] was in." Docket Item 1 at 7, 13. Between 9:30 and 10:00 pm, at the corner of French St. and Kehr St., in Buffalo, N.Y., at least two Buffalo Police Officers encountered Lockridge when they responded to the call in "several squad cars." *Id.* at 7. Lockridge spoke with defendants Alphonso Wright and Carmen Menza, two Buffalo Police Officers. *Id.* They "did not display name tags, but started to question [him] about gunshots." *Id.* Lockridge had "no clue" about those gunshots, but the officers "approached [him] as a criminal" and "show[ed] acts of annoyance toward [him]." *Id.*

The "condition" Lockridge was in is unclear, but, presumably because of it, he "begged the officers to take [him] into custody." *Id.* Lockridge was carrying $30,000 in cash, *id.* at 14, and the officers "replied that's what you get for having that much money on you." *Id.* at 7.

Lockridge left and "became frightened and paranoid." *Id.* He "made it to Genesee St. & Doat St., to the corner store to retrieve a cab to get a hotel." *Id.* "While at the store [he] was gathering [him]self together and a female in her late 20's or mid 30's assisted [him] with calling a cab because [he] couldn't receive a signal from [his] phone at [that] location." *Id.* at 7-8. Lockridge "became vulnerable to her." *Id.* at 8. She asked him if she could come to his hotel and he "accepted her offer."

In the cab, on the way to the hotel, the woman told Lockridge that she needed to stop on Wick Street off of Broadway Avenue. *Id.* at 8, 14. Once they arrived, "she went into a house on the right hand side of the lock and went in the back yard." *Id.* at 8.

4

Lockridge had to urinate, so he told the cab driver to wait while he went into the same yard to do so. *Id.*

On the way back to the cab, it pulled away, and a "short Black male approached [Lockridge] with a revolver stating to [him] give the money or I'll kill you." *Id.*[2] Lockridge gave him "the money," apparently $2,000, and "ran for [his] life," but he tripped on his shoelaces and his boot came off. *Id.* at 8-9.

Lockridge made it to a store near the corner of Wick Street and Broadway Avenue. *Id.* at 8. The store clerk called the police for him. *Id.* When the Buffalo Police arrived, Lockridge told them what happened, and they requested paramedics. *Id.* The police told Lockridge that a detective would follow up with him regarding the criminal act, but he "never heard from any investigators since" the event occurred. *Id.*

"If the Buffalo Police would have taken [Lockridge] into custody the robbery would have never occurred." *Id.* at 9.

The Buffalo Police drafted a police report regarding the incident. *Id.* at 14. The report summarizes the events as Lockridge described them. *Id.* But it falsely notes that the woman who accompanied Lockridge in his cab "suggested that [Lockridge] buy some weed" and that this was the purpose of the stop at Wick St. *Id.* at 6, 14. And the report includes other unspecified false statements as well. *Id.* at 6.

---

[2] Lockridge told the police that "two men in dark clothing jumped toward him displaying a handgun and robbed him of a large amount of money." Docket Item 1 at 14.

### B. Analysis

#### 1. Section 1983

*a. Due Process Duty to Protect*

"The Fourteenth Amendment to the United States Constitution provides that a State shall not 'deprive any person of life, liberty, or property, without due process of law.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755 (2005) (quoting U.S. Const. Amdt. 14, § 1). "In 42 U.S.C. § 1983, Congress has created a federal cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Id.* But "the so-called 'substantive' component of the Due Process Clause does not 'require the State to protect the life, liberty, and property of its citizens against invasion by private actors.'" *Id.* (quoting *DeShaney v. Winnebago Cty. Dept. of Soc. Sevs.*, 489 U.S. 189, 195 (1989)).

To state a procedural due process claim "for deprivation of property without due process of law, a plaintiff must identify a property interest protected by the Due Process Clause." *Harrington v. Cty. of Suffolk*, 607 F.3d 31, 34 (2d Cir. 2010). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* (quoting *Castle Rock*, 545 U.S. at 756). "Such entitlements are not created by the Constitution but 'rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Castle Rock*, 545 U.S. at 756). "Although the substantive interest derives from an independent source such as state law, '*federal constitutional law* determines whether that interest rises to the level of a

6

legitimate claim of entitlement protected by the Due Process Clause.'" *Id.* (quoting *Castle Rock*, 545 U.S. at 757).

"The Supreme Court has explained that 'a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" *Id.* (quoting *Castle Rock*, 545 U.S. at 756). "[A] well established tradition of police discretion has long coexisted with' laws that apparently impose mandatory duties on police." *Id.* (quoting *Castle Rock*, 545 U.S. at 760). "Accordingly, the Court has declared that 'the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations.'" *Id.* (quoting *Castle Rock*, 545 U.S. at 768).

In light of those principles, Lockridge had no substantive due process right to be protected by the police, nor did he have a protected property interest either (1) to have been taken into custody by the police to prevent a possible future robbery or (2) to have the police department investigate his robbery.

"[T]he duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion." *Id.* at 35. "That discretion precludes any 'legitimate claim of entitlement' to a police investigation." *Id.* (quoting *Castle Rock*, 545 U.S. at 756). And whatever discretion police officers have in investigating criminal acts, they have at least as much discretion in deciding whether to take someone into custody. Indeed, the police *cannot* take someone into custody merely because that individual asks them to.

For all those reasons, Lockridge's duty-to-protect claim against the defendants is legally insufficient to survive screening.

7

### b. Equal Protection

Lockridge also suggests that the defendants did not investigate his criminal complaint "on the basis of [his] race, color, national origin, sex, and religion." Docket Item 1 at 6, 8-9.

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). "To show a violation of the Equal Protection Clause, [Lockridge] must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635 (7th Cir. 2001). Lockridge "may show that the [defendants] treated [him] differently than other similarly situated individuals by naming such individuals or through the use of statistics." *Id.* at 636. *See also Floyd v. City of New York*, 959 F. Supp.2d 540, 661 (S.D.N.Y. 2013) (applying *Chavez* "to establish an equal protection violation based on an intentionally discriminatory application of a facially neutral policy").

Lockridge's complaint indicates that he is an African-American. Docket Item 1 at 14. But he includes no factual allegations showing that any defendant was motivated by his race or any other characteristic when deciding not to assist him or to investigate a crime allegedly committed against him. Furthermore, he has not named other individuals who were treated differently than he was, nor does he allege a class-based statistical disparity between the treatment of his class and another class by the police department.

Therefore, Lockridge's complaint fails to state a viable equal protection claim. Nevertheless, because of his pro se status, Lockridge is given leave to amend his complaint to clarify the basis of his equal protection claim. In any amended complaint,

Lockridge should explain whether he believes the defendants intentionally discriminated against him and, if so, how and why (that is, based on his race, national origin, or other classification). Lockridge should plead any facts that give rise to or support his suspicion. Finally, he should, to the extent possible, allege how the defendants' treated others similarly situated more favorably than they treated him.

### c. First Amendment Retaliation

Lockridge suggests that the defendants did not investigate his criminal complaint—at all or adequately—in "retaliation for [his] filing a complaint with DOJ or <u>participating in the investigation</u>." Docket Item 1 at 9 (emphasis in original).

"A plaintiff asserting a First Amendment retaliation claim must establish that: (1) his speech or conduct was protected by the First Amendment, (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)).

Although Lockridge has indicated that the defendants took an adverse action against him by not investigating his criminal complaint about the person who robbed him, his complaint fails to allege any facts that support the other two elements of a first amendment retaliation claim. That is, his complaint fails to indicate whether and how he engaged in speech or conduct protected by the First Amendment (for example, by filing a complaint about a police officer or the police department). Nor does he allege any causal connection between any speech or conduct and the adverse action taken against him.

9

For that reason, the complaint fails to state a viable First Amendment retaliation claim. Nevertheless, because of his pro se status, Lockridge is given leave to amend his complaint to clarify the basis of his First Amendment retaliation claim, as indicated above. In any amended complaint, Lockridge should clearly describe (1) his protected speech or conduct and (2) the facts, if there are any, giving rise to the inference that the defendant's failures to act stemmed from his speech or conduct.

### d. Policy or Custom of the City of Buffalo or Buffalo Police Department

Lockridge brings claims against Buffalo Police Officers Alphonso Wright and Carmen Menza, presumably in their individual capacities. Docket Item 1 at 2. His complaint also indicates, however, that he intended to state a claim against the Buffalo Police Department itself, Docket Items 1 at 1 and 1-1, which is a municipal agency of the City of Buffalo.

A municipal agency "can be held liable under [§] 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Thus, the acts of individual police officers "would justify liability of the municipality if, for example, they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Jones*, 691 F.3d at 81. "A plaintiff alleging that

she has been injured by the actions of a low-level municipal employee can establish municipal liability by showing that a policymaking official ordered or ratified the employee's actions—either expressly or tacitly." *Id.*

The facts alleged in Lockridge's complaint involve conduct of the two individual defendants. There is no indication that any of their actions—even if the complaint included additional facts sufficient to give rise to an equal protection or First Amendment retaliation claim—could be imputed to the Buffalo Police Department or the City of Buffalo. For that reason, Lockridge's claims are dismissed as to the Buffalo Police Department. Nevertheless, because of his pro se status, Lockridge is granted leave to amend his complaint to allege facts, if there are any, that give rise to an reasonable inference that the individual police officers acted pursuant to a policy or custom of the Buffalo Police Department or the City of Buffalo or otherwise might give rise to a claim for municipal liability as noted above.

### 2. Section 1986

Lockridge also brings his claims under 42 U.S.C. § 1986. Docket Item 1 at 3, 7, 10. Section 1986 "provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in [§] 1985 are about to be committed and having power to prevent or aid, neglects to do so.'" *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *Katz v. Morgenthau*, 709 F. Supp. 1219, 1236 (S.D.N.Y. 1989)). "Thus, a § 1986 claim must be predicated upon a valid § 1985 claim." *Id.*

> To state a claim under § 1985, a plaintiff must allege
>
> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal

11

privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Id.* at 1087.

Lockridge's complaint is insufficient to state a § 1985 conspiracy claim and therefore fails to state a § 1986 claim as well. For the purposes of screening, the police officer's failure to investigate his criminal complaint might be a sufficient injury to meet the fourth element. But Lockridge's complaint includes no factual allegations that support the other three elements. Nevertheless, this Court cannot say that Lockridge is incapable of alleging sufficient facts and circumstances to meet the requirements of a § 1985 or § 1986 claim. For that reason, and because of his pro se status, he is given leave to amend his complaint to state a § 1986 claim in light of the above.

### 3. Title VI of the Civil Rights Act of 1964

"Section 601 of Title VI [of the Civil Rights Act of 1964] bar[s] recipients of federal funding from intentional invidious discrimination." *Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 117 (2d Cir. 2011). "[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001). "Title VI itself directly reaches only instances of intentional discrimination." *Id.* at 281 (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985)).

For the same reasons that Lockridge has failed to state an equal protection claim, he also has failed to state a claim that the defendants violated Title VI of the Civil Rights Act of 1964. Again, however, because of his pro se status, Lockridge is given leave to amend his complaint to clarify the basis of his Title VI claim. In any amended complaint, he should indicate whether he believes the defendants intentionally

12

discriminated against him, and if so, how and why they discriminated against him (that is, because of his race, national origin, or other classification); he also should provide any facts from the event that give rise to his suspicion. Finally, he should, to the extent possible, allege how the defendants treated others similarly situated more favorably than they treated him.

### 4. Safe Streets Act of 1968 Claim

Lockridge also contends that the defendants' conduct violated the Omnibus Crime Control and Safe Streets Act of 1968 (the "Safe Streets Act"), 42 U.S.C. § 3789d(c) (now codified as 34 U.S.C. § 10228). Docket Item 1 at 8.

32 U.S.C. § 10228(c)(1) provides that

> [n]o person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this chapter.

Even assuming that Lockridge was injured within the meaning of this section by an entity funded by the Safe Streets Act, the complaint does not state a claim under this provision for two reasons. The first is the same reason that the complaint fails to state an equal protection claim: The complaint includes no factual allegations indicating that any defendant was motivated by Lockridge's race or any other characteristic. Furthermore, Lockridge has not named other individuals who were treated differently than he was, nor does he allege a class-based statistical disparity between the treatment of his class and another class by the police department.

Second, even if Lockridge had properly pleaded his allegations under 34 U.S.C. § 10228, such a civil action may only be brought "after exhaustion of administrative

remedies." *See Id.* § 10228(c)(4)(A). Because the complaint does not indicate that Lockridge filed an administrative complaint "with the Office of Justice Programs or any other administrative enforcement agency," *id.*, his claim must be dismissed. *See Nash v. City of Oakwood, Ohio*, 541 F. Supp. 220, 223 (S.D. Ohio 1982) (dismissing Safe Street Act discrimination claim for failure to exhaust administrative remedies).

Nevertheless in light of his pro se status, Lockridge is given leave to file an amended complaint addressing the deficiencies in his Safe Streets Act claim.

### 5. Negligence

Finally, Lockridge contends that his injuries resulted from the negligence of "all participating employees of the Buffalo Police Department." Docket Item 1 at 6. "As a general rule, a municipality may not be held liable for injuries resulting from a failure to provide police protection." *Mastroianni v. Cty. Of Suffolk*, 91 N.Y.2d 198, 203 (1997). "However, [the New York Court of Appeals] ha[s] recognized potential liability stemming from the presence of a 'special relationship existing between the municipality and the injured party.'" *Id.* (quoting *Sorichetti v. City of New York*, 65 N.Y.2d 461, 468 (1985)).

> The elements of this 'special relationship' are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Cuffy v. City of New York*, 69 N.Y.2d 255, 260 (1987).

Lockridge's complaint fails to allege facts to establish any special relationship. Lockridge alleges that he was injured either (1) because he was not taken into custody by the police to prevent a possible future robbery or (2) because of the police's failure to

14

investigate his robbery.  Neither circumstance satisfies the elements of a special

relationship.  Nevertheless, in light of his pro se status, Lockridge is given leave to

amend his complaint to clarify the basis of any special relationship he had with the

Buffalo Police.  Because negligence is a state law claim, Lockridge also must state a

federal claim to maintain his state law claim for negligence under this Court's

supplemental jurisdiction.

### III.    MOTION TO APPOINT COUNSEL

Lockridge also has asked the Court to appoint counsel for him.  Docket Item 4.

Under 28 U.S.C. § 1915, "[t]he court may request an attorney to represent any person

unable to afford counsel."  "Broad discretion lies with the district judge in deciding

whether to appoint counsel pursuant to this provision."  *Hodge v. Police Officers*, 802

F.2d 58, 60 (2d Cir. 1986).  In deciding whether to appoint counsel, courts should

consider "the merits of the indigent's claim[,] ... the nature of the factual issues the claim

presents[, and] ... the plaintiff's apparent ability to present the case."  *Id.* at 60-61.  The

only facts this Court now has before it are those alleged in Lockridge's complaint, which

has not sufficiently stated a claim upon which relief may be granted.  Without a

complaint alleging facts upon which relief may be granted and without a response from

the defendants, the Court lacks a sufficient basis to appoint counsel.

Additionally, "the language of the statute itself requires that the indigent be

unable to obtain counsel before appointment will even be considered."  *Id.* at 61.  Thus,

"the indigent's efforts to obtain counsel should be considered."  *Id.*  Here, Lockridge

contends that he has "attempted to find [his] own attorney but has been unable to do so

because legal research of my own."  Docket Item 4.  He also explained that the Court

should grant his request to appoint him counsel because "the Buffalo Police didn't fulfill the[ir] call of duty and this case demonstrates how something so easy can become a bad situation." *Id.*

Some attorneys may be willing to represent a client based on a contingency fee arrangement—that is, the attorney may be willing to represent the plaintiff in exchange for a percentage of the recovery he receives if his claim is successful.

Because Lockridge's request for appointment of counsel is premature, and because his motion does not sufficiently explain his efforts to obtain counsel, the motion to appoint counsel is denied without prejudice.

## **CONCLUSION**

Lockridge has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required affidavit. The Court therefore grants his request to proceed in forma pauperis.

For the reasons stated above, however, none of his claims are legally sufficient to proceed. Therefore, Lockridge's due process duty-to-protect claim is dismissed with prejudice; and his remaining claims will be dismissed unless, by May 24, 2019, he files an amended complaint correcting the deficiencies noted above.

## **ORDER**

IT HEREBY IS ORDERED that the plaintiff's motion to proceed in forma pauperis, Docket Item 3, is GRANTED; and it is further

ORDERED that Lockridge's motion to appoint counsel, Docket Item 4, is DENIED without prejudice; and it is further

ORDERED that Lockridge's due process duty-to-protect claim is dismissed with prejudice; and it is further

ORDERED that Lockridge is granted leave to file an amended complaint that addresses the shortcomings identified in this order no later than May 24, 2019; and it is further

ORDERED that if the plaintiff fails to file an amended complaint as directed above by May 24, 2019, all claims against all defendants shall be dismissed with prejudice without further order of the Court; and it is further

ORDERED that if the event the complaint is dismissed because the plaintiff has failed to file an amended complaint, this court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: April 9, 2019
Buffalo, New York

   *s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE